## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SIRLEY AMANCIO,
　　*Plaintiff*,

STATE OF CONNECTICUT
　　*Intervenor*,

　　v.

JEFFERY DEPERRY and TOWN OF OLD
SAYBROOK
　　*Defendants*.

No. 3:22-cv-918 (VAB)

## RULING AND ORDER ON MOTION TO REMAND

Sirley Amancio ("Mr. Amancio") has sued Jeffery DePerry ("Captain DePerry") and the

Town of Old Saybrook ("Old Saybrook") (collectively "Defendants") asserting claims of false

arrest and violation of the Connecticut Trust Act ("Trust Act"). *See* Compl. at 2-7, ECF No. 1-1

(June 24, 2022) ("Compl."). Mr. Amancio alleges that Captain DePerry arrested him without

probable cause and detained him on behalf of the Federal Immigration Customs and

Enforcement officers. *Id.* at 2–4. Mr. Amancio also alleges that Old Saybrook failed to train its

officers regarding the Trust Act, which, *inter alia*, prohibits Captain DePerry's actions. *Id.* at 5–

7. As a result, Mr. Amancio alleges that he suffered various injuries including emotional distress

and he is now in active deportation proceedings. *Id.* at 3, 4, 6.

After Mr. Amancio filed this lawsuit in Connecticut Superior Court, Captain DePerry and

Old Saybrook removed to federal court on the basis of the federal-officer removal statutes, 28

USC § 1442(a)(1), arguing that the Trust Act is preempted by federal immigration laws. *See*

Notice of Removal, ECF No. 1 (July 21, 2022) ("Notice of Removal"). Mr. Amancio has filed a

motion to remand the case to state court, arguing that Defendants do not meet the requirements for removal under § 1442(a)(1). *See* Mot. to Remand, ECF No. 12 (Aug. 17, 2022) ("Mot. to Remand"). Opposing the motion to remand, Defendants argue that removal under § 1442(a)(1) is proper because Captain DePerry was acting under the direction of a federal directive in an effort to carry out that officer's duty. *See* Defs.' Opposition to Mot. to Remand, ECF No. 14 (Sep. 6, 2022) ("Opp'n").

The State of Connecticut filed a motion to intervene and defend the constitutionality of the Trust Act. *See* State of Connecticut Mot. to Intervene, ECF No. 15 (Sep. 8, 2022). The State of Connecticut has filed a memorandum in support of the motion to remand, arguing that the Trust Act is not preempted. *See* State of Connecticut Mem. in Support of Mot. to Remand, ECF No. 19 (Sep. 30, 2022) ("Connecticut Mem.").

For the following reasons, the motion to remand is **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On September 4, 2020, Mr. Amancio was allegedly doing carpentry work with two other individuals at the home of the Scott Desmond in Old Saybrook. *See* Compl. at 2. At the time, Scott Desmond was not on the property. A neighbor of Scott Desmond, who was across the fence in her house, allegedly started yelling at Mr. Amancio and the other individuals. *Id*. The neighbor allegedly asked Mr. Amancio and the individuals what they were doing in Scott Desmond's house, and she informed them that she was going to call the police. *Id.*

Captain DePerry, a captain at the Town of Saybrook's Police Department, accompanied by another police officer, arrived at the home of Scott Desmond, and allegedly asked Mr. Amancio for identification. *Id*. According to Mr. Amancio, he provided a valid driver's license.

*Id.* Scott Desmond arrived at the house and confirmed to Captain DePerry that Mr. Amancio was authorized to be on the property. *Id.* at 3. Nevertheless, Captain DePerry allegedly arrested Mr. Amancio, notwithstanding the fact that Scott Desmond confirmed that Mr. Amancio was authorized to be in the house. *Id*.

According to Mr. Amancio, Captain DePerry, in violation of Connecticut General Statute § 54-192h, *see id.* at 4, notified a federal immigration authority that Mr. Amancio would be held at the Old Saybrook Police Department until an Immigration and Customs Enforcement ("ICE") Agent was able to interview him, *id.* at 3. The sole purpose of the arrest, according to Mr. Amancio, was to take him into custody on behalf of ICE. *Id.* Captain DePerry allegedly detained Mr. Amancio from 8:30 p.m. to 11:30 p.m. when an ICE officer, Mr. Valentin, arrived at the police station to interview Mr. Amancio. *Id.*

Following the interview, Mr. Valentin, the ICE Officer, ordered Mr. Amancio to appear at 450 Main Street, in Hartford, on September 9, 2020. *Id.* According to Mr. Amancio, when he arrived at 450 Main Street, in Hartford, on September 9, 2020, he was immediately detained by ICE and thereafter transported to an immigration detention facility in Massachusetts where he was detained until November 6, 2022. *Id.*

Throughout his detention, Mr. Amancio was allegedly under fear of imminent deportation. *Id.* Since his release, Mr. Amancio has allegedly been in active removal proceedings in Immigration Court. *Id.* As a result of these detentions, by Captain DePerry and ICE, and the imminent fear of deportation, Mr. Amancio allegedly has suffered emotional distress. *Id.* According to Mr. Amancio, his injuries are also result of the Town of Old Saybrook and the Old Saybrook Police Department allegedly illegal policies and practices of not providing appropriate training to its officers, with respect to the Connecticut General Statute § 54-192h. *Id.* at 6.

3

### B. Procedural History

On June 24, 2022, Mr. Amancio filed his Complaint in Connecticut Superior Court asserting two state law claims against Captain DePerry (False Arrest and Violation of Connecticut General Statute § 54-192h) and one state law claim against the Town of Old Saybrook ("Failure to Implement or Train Its Employees Regarding" Connecticut Gen. Stat.  54-192h.). *See* Compl.

On July 21, 2022, Defendants removed the case to federal court under 28 U.S.C § 1442(a)(1). *See* Notice of Removal.

On August 17, 2022, Mr. Amancio filed a motion to remand the case to state court on the ground that Defendants were not acting under the color of a federal office. *See* Mot. to Remand.

On August 23, 2022, counsel for Defendants filed a notice indicating that counsel has alerted the Connecticut Attorney General's Office of a potential challenge to the validity of a portion of Conn. Gen. Stat. § 54-192h. *See* Notice, ECF No. 13.

On September 6, 2022, Defendants filed an opposition to the motion to remand. *See* Opp'n.

On September 8, 2022, counsel for the State of Connecticut appeared. *See* Notice of Appearance, ECF No. 16. On the same day, the State of Connecticut filed a motion to intervene As of Right, under 28 U.S.C. § 2403 and F. R. Civ. P. 5.1, to defend the constitutionality of Conn. Gen. Stat. § 54-192h.  *See* Mot. to Intervene, ECF No. 15 at 1. The Court granted that motion on September 15, 2022. *See* Order, ECF No. 18.

On September 13, Mr. Amancio filed a Reply in further support of his motion to remand. *See* Reply, ECF No. 17.

On September 30, 2022, the State of Connecticut filed a memorandum in support of the

motion to remand. *See* Connecticut Mem.

On October 6, 2022, Defendants filed a response to the State of Connecticut's memorandum in support of the motion to remand. *See* Defs. Response, ECF No. 21 ("Sur-reply").

## II.  STANDARD OF REVIEW

"The right of removal is entirely a creature of statute and a suit commenced in state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citation and internal quotation marks omitted). Under 28 U.S.C § 1442, the federal-officer removal statute, Congress authorized a case to be removed from state to federal court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). The federal-officer "removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations'[.]" *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).

"As a general matter, 'the defendant bears the burden of demonstrating the propriety of removal.'" *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 316 (E.D.N.Y. 2014) (quoting *Grimo v. Blue Cross/Blue Shield of Vt.,* 34 F.3d 148, 151 (2d Cir.1994)).  "Unlike other removal provisions, [28 U.S.C.] § 1442, is not to be construed narrowly, but instead with sufficient breadth to effectuate its purpose." *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 329 (D. Conn. 2008). *See also Connecticut v. Exxon Mobil Corp.,* No. 3:20-CV-1555 (JCH), 2021 WL 2389739, at *11 (D. Conn. June 2, 2021) ("In contrast to 'the general removal

statute[, which] must be strictly construed, both [section] 1442 and especially its 'acting under' provision must be read broadly.'" (citing *Agyin v. Razman*, 986 F.3d 168, 175 (2d Cir. 2021) (alterations in original)).

"The Supreme Court has cautioned that the scope of the federal officer removal statute 'is not narrow or limited.'" *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014) (quoting *Willingham*, 395 U.S. at 406)). To succeed on a motion to remand under the federal removal statute, "a defendant's showing need not go beyond adequately supported assertions," in its Notice of Removal. *Pantalone*, 576 F. Supp. 2d at 329 (citing *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 139 (2d Cir. 2008).

## III.    DISCUSSION

Mr. Amancio alleges separate claims against Captain DePerry and the Town of Saybrook: false arrest ("Count One") and violation of the Trust Act ("Count Two") are brought against Captain DePerry; and failure to implement or train its employees regarding the Trust Act ("Count Three"), is brought against the Town of Old Saybrook. In their Notice of Removal, Captain DePerry and the Town of Old Saybrook jointly seek to remove the case. Mr. Amancio has moved to remand the entire case back to state court. Because the claims against the Defendants are distinct, the Court will analyze the propriety of removal as to each defendant— and the claim or claims against each defendant—separately.

### A.  The Claims against Captain DePerry

Mr. Amancio and the State of Connecticut argue that Captain DePerry, as a non-federal officer, has not met the removal requirements under 28 U.S.C. § 1442(a)(1)—the federal removal statute—and therefore, the Court must remand this case to state Court. *See* Mot. to Remand at 3–10; Connecticut Mem. at 10–19. To effect removal on the basis of § 1442(a)(1), a

non-federal officer defendant, such as Captain DePerry, must show  "(1) that [he] is a 'person' within the meaning of the statute who acted under a federal officer; (2) [who] performed the actions for which [he] is being sued under color of federal office; and (3) that [he] has a colorable federal defense." *Scrogin v. Rolls-Royce Corp.*, No. 3:10CV442 WWE, 2010 WL 3547706, at *4 (D. Conn. Aug. 16, 2010) (citing *Isaacson*, 517 F.3d at 135).

The Court will address each of these requirements in turn.

### 1. A Person[1] "Acting Under" an Officer or Agency of the United States

"The words 'acting under'" in § 1142(a)(1), "are to be interpreted broadly, and the statute as a whole must be liberally construed." *Isaacson*, 517 F.3d at 136. This broad construction is particularly apt "with respect to private parties who claim to be 'acting under' a federal officer." *Razmzan*, 986 F.3d at 175 (quoting *Isaacson*, 517 F.3d at 137). "Acting under" describes a "relationship between a private [person] and a federal officer[,]" *id.*, and at its core, the relationship "must involve [the private person's] effort to *assist,* or to help *carry out,* the federal superior's duties or tasks[,]" *Watson*, 551 U.S. at 143 (emphases in original). "The assistance that private [persons] provide federal officers[,]" however, "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id.* at 153. In other words, to effectuate removal under the federal-officer removal statute, a defendant "must have done more than merely compl[y] with a federal legal or regulatory scheme." *Pantalone*, 576 F. Supp. 2d at 330.

Captain DePerry argues that he satisfies the "acting under" requirement of § 1442(a)(1) "because he was helping a federal officer from the United States Department of Homeland

---

[1] At the outset, the Court notes that neither Mr. Amancio nor Connecticut contest that Captain DePerry is a person within the meaning of § 1442. The Court therefore assumes that that requirement is satisfied and instead will focus its analysis on the "acting under" requirement of this prong of § 1442(a)(1).

Security carry out his duties[.]" Notice of Removal at 3, ¶ 7. According to Captain DePerry, he "received a detainer from a Federal Immigration Officer . . . notifying him to maintain custody of" Mr. Amancio. *Id.* at 3, ¶ 8. In detaining Mr. Amancio, Captain DePerry argues, he "worked hand-in-hand with the federal government to achieve a task that furthers an end of the federal government[.]" *Id.* Therefore, Captain DePerry argues, the alleged misconduct giving rise to the claims against him occurred while he was "acting under" a federal officer.

Mr. Amancio responds that Captain DePerry "was not acting under federal authority." Mot. to Remand, at 9.[2] He argues that Captain DePerry "contacted ICE **after** taking [him] into custody and depriving him of his freedom without probable cause." Mot. to Remand at 10 (emphasis in original). Mr. Amancio then concludes: "The purpose of the [federal-officer removal] statute is not to cloth local police officers with potential federal immunity defenses[,]" and that removal in this case would not be "consistent with the purposes of the federal removal statute." *Id.*

The Court disagrees.

At this stage of the litigation, Captain DePerry "need not go beyond adequately supported assertions," that he was acting under the guidance of a federal officer to satisfy the "acting under" requirement. *Pantalone*, 576 F. Supp. 2d at 329 (citing *Isaacson*, 517 F.3d at 139). And here, Captain DePerry asserts—and Mr. Amancio does not dispute—that he "received a detainer from [ICE] notifying him to maintain custody of" Mr. Amancio. Notice of Removal at 3, ¶ 8. As Second Circuit precedent requires, this Court "must 'credit the defendants' theory of the case' when evaluating the relationship between the defendants' actions and the federal officer." *Razmzan*, 986 F.3d at 175 (quoting *Isaacson*, 517 F.3d at 137) (alteration removed). *See also*

---

[2] The State of Connecticut does not contest that Mr. DePerry was acting "acting under" a federal officer. *See* Connecticut Mem. at 9 ("Remand here hinges on whether th[e] defense is 'colorable.'")

*Castillo v. Snyders*, 497 F. Supp. 3d 299, 303 (N.D. Ill. 2020) (finding that local sheriff was "acting under" a federal agent where the sheriff "alleges that he 'worked hand-in-hand' with ICE agents to help them carry out their function as federal immigration officers[] (citing to Notice of Removal in that case)).

Indeed, Mr. Amancio appears to concede that Captain DePerry was following the guidance of a federal officer. *See e.g.*, Mot. to Remand at 2 ("DePerry . . . took Amancio into custody on behalf of ICE. DePerry detained Amancio from 8:30pm until 11:30pm, until an ICE officer named Valentin arrived at the police station."); Compl. at 4 ("DePerry . . . [f]acilitated the arrest of Amancio by a federal immigration authority[.]"); *id.* ("DePerry . . . [p]erformed the function of a federal immigration authority.").

Accordingly, on the basis of the facts alleged in the Notice of Removal, and in absence of any meaningful objections to those facts, the Court concludes that Captain DePerry satisfies the "acting under" requirement of § 1442(a)(1). *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether [removal] is proper, we look only to the jurisdictional facts alleged in the Notices of Removal." (collecting cases)).

### 2. "Under Color" of Federal Office

To effectuate removal under § 1442(a)(1), Captain DePerry must also "show that the acts [Mr. Amancio] complained of . . . were taken 'under color of [federal] office.'" *Isaacson*, 517 F.3d at 137 (quoting 28 U.S.C. §1442(a)(1)). "The hurdle erected by this requirement"—"known as the causation requirement"—"is quite low[.]" *Id.* Here, Captain DePerry need simply show "that the acts for which [he is] being sued . . . occurred *because of* what [he was] asked to do by the Government." *Id.* "The Second Circuit has observed . . . [that] a defendant need not [even]

show that a plaintiff's claims are 'for the very acts' the defendant performed under color of federal office." *Exxon Mobil*, 2021 WL 2389739, at *10–12. "Rather, [i]t is enough that his acts or his presence at the place in performance of his official duty constitute the basis," of the litigation. *Isaacson,* 517 F.3d at 137 (citation and quotation marks omitted).

Captain DePerry argues that he is "being sued for detaining plaintiff . . . under the direction of Federal Immigration Enforcement Officers." Notice of Removal at 3, ¶ 9. Because he took these actions "in his role as a police officer[,]" Captain DePerry argues, "his actions were taken under the color" of a federal office. *Id.*

Mr. Amancio does not respond to this argument. To the contrary, Mr. Amancio acknowledges that Captain DePerry "[f]acilitated [his] arrest[,]" Compl. at 4, when Captain DePerry "took [him] into custody on behalf of ICE[,]" and "detained [him] . . . until an ICE officer . . . arrived at the police station." Mot. to Remand at 2.

Mr. Amancio's own statement therefore leave no doubt that "a causal connection exists" between Captain DePerry actions and the guidance he received from ICE. *Isaacson,* 517 F.3d at 137.

Accordingly, the Court finds that Captain DePerry also has "made the required showing[,]" under this prong. *Id.* at 138.

### 3. Colorable Federal Defense

Finally, to effectuate removal under § 1442(a)(1), a defendant must have a "colorable" federal defense. Consistent with the broad construction applied to §1442, "[c]ourts have imposed few limitations on what qualifies as a colorable federal defense[,]" under the statute. *Id.* "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Id.* at 139 (citing *Willingham,* 395

U.S. at 407). *See also Crane*, 771 F.3d at 116 ("The inquiry on the motion to remand is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice . . . to determine the threshold jurisdictional issue. A merely 'colorable' defense is sufficient[.]"); *Crews v. Air & Liquid Sys. Corp.*, No. 7:12-CV-1678 FJS, 2014 WL 636362, at *2 (N.D.N.Y. Feb. 18, 2014) ("[A]n 'officer need not win his case before he can have it removed.'" (quoting *Willingham*, 395 U.S. at 407)).

Captain DePerry argues that the Trust Act, on which one of the claims against him is based, is "preempted by federal law[,]" because the Act "attempts to direct state and local law enforcement officers as to when it is appropriate to detain [individuals] pursuant to suspected immigration status." Notice of Removal at 4, ¶ 10. In so doing, Captain DePerry argues, the Trust Act contravenes, *inter alia*, Supreme Court precedent in *Arizona v. United States* where, according to Captain DePerry, the Court invalidated a state law "directing state and local officers as to when it is appropriate to arrest an [individuals] on the basis of removability[.]" *Id.*; 567 U.S. 387, 407 (2012).

In response, Mr. Amancio mainly argues the merits of the Captain DePerry's preemption defense. *See, e.g.,* Mot. to Remand at 4–9 (relying primarily on federal cases outside of the Second Circuit to argue that that the Trust Act is not preempted by federal immigration law). Except in a conclusory fashion, Mr. Amancio does not meaningfully address whether Captain DePerry's defense is at least "merely colorable[,]" the standard under which Captain DePerry's defense is to be assessed. *Crane*, 771 F.3d at 116.

The State of Connecticut likewise primarily argues the merit of Captain DePerry's preemption defense. *See, e.g.*, Connecticut Mem. at 10–20 (arguing that Trust Act is not preempted by federal immigration law). It simply argues that Captain DePerry failed to meet his

burden. According to the State of Connecticut, a "colorable" defense "is rooted in well-pled facts that, unrebutted, would give rise to at least an inference of ultimate success." Connecticut Mem. at 9. In the State of Connecticut's view, "[a] defense that cannot succeed, no matter which underlying facts may emerge, cannot be colorable." *Id*. Therefore, because Captain DePerry's defense "cannot succeed," according to the State of Connecticut, his defense "cannot be colorable[.]" *Id.*

The State of Connecticut also argues that "Defendants' real defense is that the Trust Act did not create a private right of action." *Id.* at 8. More pointedly, the State notes that: "whether the Connecticut General Assembly implied a state law cause of action is a question of state statutory interpretation for Connecticut's courts to decide." *Id.*

The Court agrees.

To some extent, the State of Connecticut advances an interpretation of the § 1442(a)(1) that could lead to "the anomalous result" that the Supreme Court has counseled against. *Willingham*, 395 U.S. at 407. Requiring Captain DePerry to show that his defense can in fact succeed—a requirement expressly rejected by the Supreme Court—would, in effect, mean having this case "removed only to be dismissed." *Id.* Put differently, under the State of Connecticut's view, only a case which has "a clearly sustainable" defense may be removed under § 1442(a)(1). *Isaacson*, 517 F.3d at 139. The Supreme Court has instructed federal court to reject such "a narrow, grudging interpretation of [Section] 1442(a)(1)." *Willingham*, 395 U.S. at 407. *See also Crane*, 771 F.3d at 115–16 (explaining that "colorable" need not "even be 'clearly sustainable'" and that "[a] merely 'colorable' defense is sufficient[,]" (quoting *Isaacson,* 517 F.3d at 139)).

The State of Connecticut therefore overstates the burden imposed on a defendant raising a colorable federal defense under §1442(a)(2).[3] At this preliminary stage, the inquiry is not, as the State of Connecticut suggests, whether Captain DePerry's defense can or "cannot succeed[.]" Connecticut Mem. at 9. Rather, it is whether "the facts identified by [Captain DePerry] support the federal defense" he is asserting. *Crews*, 2014 WL 636362, at *3 (quotation marks omitted).

Captain DePerry argues that "the 'authority to control immigration' is vested solely in the Federal Government.'" Notice of Removal at 4, ¶ 10 (quoting *Truax v. Raich,* 239 U.S. 33, 42 (1915)). Consistent with this "well established" precedent, he argues, the Trust Act is preempted, insofar as the Act attempts to "creates . . .  a private cause of action for money damages" against police offices like him who "work hand-in-hand" ICE agents. Notice of Removal at 4, 3, ¶¶ 10, 8. To assess whether that defense is "colorable" under § 1442(a)(1), the Court need only "rely on [Captain DePerry's] assertion[] for the basis of the defense and . . . not consider whether the defense will ultimately prevail." *Scrogin*, 2010 WL 3547706, at *5. "To choose between" the State of Connecticut's and Captain DePerry's "readings of the [Trust Act] is to decide the merits of this case[,]" *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999), and at this stage of the litigation, the Court is not called to decide the merits. *See Castillo*, 497 F. Supp. at 307 ("[A]

---

[3] Throughout its brief, the State of Connecticut appears to heighten the burden facing a defendant seeking removal under § 1442(a)(1). *See e.g.*, Connecticut Mem. at 8 ("Removal is disfavored[.] . . . 'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" (quoting *Scrogin*, 2010 WL 3547706, at *5–6). As the Court noted *supra* part II*,* however, the federal removal statute—the statute under which Mr. DePerry seeks to remove his case—differs in significant respects from the general removal statute. The latter disfavors removal while the former is much less restrictive of removal. *Compare Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the [general] removal statute narrowly, resolving any doubts against removability.") (citation and internal quotation marks omitted), and *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). ("[T]he party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)), *with Crane*, 771 F.3d 113 at 115 ("The Supreme Court has cautioned that the scope of the federal officer removal statute is not narrow or limited.") (quotation marks omitted) and *Pantalone*, 576 F. Supp. 2d at 329 (explaining that to succeed on a motion to remand under the federal remove statutes, "a defendant's showing need not go beyond adequately supported assertions," in its Notice of Removal. (citation omitted)).

discussion of the merits of the . . .  preemption challenge . . . is improper at [the motion to remand] stage. Under § 1442(a)(1), the Court asks only whether the alleged federal defense is plausible, not whether it is correct.").

Indeed, federal courts, both in this Circuit and outside of it, have found a well-articulated preemption defense raised in the notice of removal to be a "colorable." *See, e.g.*, *Yeend v. Akima Glob. Servs., LLC*, No. 120CV1281TJMCFH, 2021 WL 3721420, at *9 (N.D.N.Y. Aug. 23, 2021) (accepting, as a "colorable" defense, defendant's argument that a state minimum wage law related to immigrant detainees was preempted by federal immigration law); *Castillo*, 497 F. Supp. 3d at 307 (finding that a preemption challenge to a law similar to the Trust Act is a "colorable" defense to support removal under § 1442(a)(1)).[4]

Therefore, contrary to the State of Connecticut's suggestion, Captain DePerry, need not show that his preemption defense can, in fact, succeed "before he can have [his case] removed." *Willingham*, 395 U.S. at 407. Neither the Supreme Court nor the Second Circuit has placed such

---

[4] The State of Connecticut urges this Court to reject the holding in *Castillo* in favor of the "more convincing[] precedent" in *Flores v. City of Baldwin Park*, No. CV 14-9290-MWF JCX, 2015 WL 756877, at *1 (C.D. Cal. Feb. 23, 2015). Connecticut Mem. at 11 n.4. Unlike *Castillo*, however, the basis of removal in *Flores* was 28 U.S.C. § 1331, the federal question statute, and not 28 U.S.C. § 1442(a)(1), the federal officer removal statute. *See Flores*, 2015 WL 756877, at *1 ("In its Notice of Removal, Defendant asserted that this Court has original jurisdiction over the action under 28 U.S.C. § 1331."). *Castillo,* therefore, is the more persuasive authority that directly bears on the question of whether preemption is a colorable defense under § 1442(a)(1).

a burden on a defendant seeking removal under §1442 (a)(1).[5, 6]

At this stage of the litigation, however, the Court does not have before it—nor is it required to have—the "factual detail to determine the interplay between [the Trust Act] and the structure and purpose of federal immigration law." *Yeend*, 2021 WL 3721420, at *9. *See also Crews*, 2014 WL 636362, at *3 ("[A] colorable defense need not be proven at [the remand] stage of the litigation[.]" (quotations marks omitted)); *Scrogin*, 2010 WL 3547706, at *5 ("[T]he Court should rely on defendant's assertions for the basis of the defense and should not consider whether the defense will ultimately prevail.") (citation and quotation marks omitted).

But, as Captain DePerry himself concedes, the availability of his allegedly colorable federal defense is not dependent on "factual detail," but on his hypothetical reading of the scope of the Trust Act. *See* Opp'n at 5 ("In this case, the entire statute is not challenged. It is challenged only to the extent it creates a duty on an individual police officer which is subject to a private cause of action for money damages for violation."). In other words, Captain DePerry

---

[5] The State of Connecticut also argues that, as a threshold matter, Mr. DePerry has not met the "necessary precondition for preemption[.]" Connecticut Mem. at 3. Because the federal statutes that Mr. Amancio contends preempt the Trust Act regulate states, not private actors, those statutes, Connecticut argues, cannot preempt state law. *Id.* To support its position, the State of Connecticut relies exclusively on Third and Seven Circuit decisions— *Ocean Cty. Bd. of Comm'rs v. Attorney General of New Jersey*, 8 F.4th 176, 181-82 (3d Cir. 2021) and *McHenry Cty. v. Raoul*, 44 F.4th 581 (7th Cir. 2022), respectively—while urging this Court to give "no weight" to a Second Circuit decision, *New York v. United States Department of Justice*, 951 F.3d 84, 114 n.27 (2d Cir. 2020), which addresses, albeit *in dicta*, this very issue. Connecticut Mem. at 10 n.3. In addition to being merely persuasive out-of-circuit decisions, the Third and Seven Circuit decisions are based on fully developed district court records addressing the merits of preemption as it related to New Jersey and Illinois statutes similar to the Trust Act. In contrast, the State of Connecticut is urging this Court to address the constitutionality of the Trust Act on the limited record meant to address whether the Court has jurisdiction to hear this case. The Court declines to address the validity of a state statute on such a limited record at this time.

[6] The remainder of the State of Connecticut brief is dedicated to a merits analysis on why the Trust Act is not preempted by federal law. Mr. Amancio likewise offer a detail analysis of the merits of Mr. DePerry's defense. Again, at this preliminary stage of the litigation, "the Court is not called upon . . . to pierce the pleadings" and render a merits decision of Mr. DePerry's defense. *Crews*, 2014 WL 636362, at *3 (citation and quotation marks omitted). The Court need only be "assure[d] . . . that it has jurisdiction to adjudicate the case." *Kircher v. Putnam Funds Trust,* 547 U.S. 633, 644 n. 12 (2006). *See also Crane*, 771 F.3d at 116 ("The inquiry on the motion to remand is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice[.]").

does not know—nor can he know—if the Trust Act actually creates a cause of action for Mr. Amancio's claims. And no Connecticut court has been asked, let alone answered, that threshold question.[7]

This is no minor matter. The issue of preemption, either conflict preemption or field preemption, is wholly dependent on whether the Trust Act can be interpreted to conflict with existing federal law. Because "state laws are preempted when they conflict with federal law," *Arizona*, 567 U.S. at 399, it is imperative to know whether the law actually can be interpreted to conflict with federal law. *See Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 137 (D. Mass. 2009) (granting a motion to remand under § 1442(a)(1) because defendants' asserted defense "rest[ed] entirely on an untested hypothetical[]"); *Moore v. Asbestos Defendants (B*P)*, No. CV 10-01638 RS, 2010 WL 2650487, at *4 (N.D. Cal. July 1, 2010) (same).

Put yet another way, in order for this Court to even reach the merits of preemption at some point, this Court would have to interpret the scope of the Trust Act, Connecticut law, without any guidance from a Connecticut court. The better course of action is to permit the Connecticut courts to resolve the scope of the Trust Act before presuming, consistent with the doctrine of constitutional avoidance, that the issue of preemption is properly before this Court now. *Cf. Hagans v. Lavine,* 415 U.S. 528, 546 (1974) ("The Court has characteristically dealt first with possibly dispositive state law claims pendent to federal constitutional claims."); *Moore v. Cnty. of Suffolk*, 851 F. Supp. 2d 447, 459 (E.D.N.Y. 2012) (concluding that where "deciding the state law claim will likely make it unnecessary to consider [a] constitutional claim[,]" a court should consider the state law claims first); *see also id.* at 456 (noting that the "*Pullman* doctrine permits a federal court to abstain from deciding a state law issue 'when it appears that abstention

---

[7] In fact, the Court has found no Connecticut decision addressing any aspect of the Trust Act.

16

may eliminate or materially alter the constitutional issue presented[]'") (first quoting *Ohio Bureau of Emp' Servs. Et al. v. Hodory*, 431 U.S. 471, 481 (1977); and then citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941)).

Accordingly, for those reasons, the Court will grant the motion to remand as to the claims against Captain DePerry.[8]

### B.  The Claims against Town of Old Saybrook

Having decided that the claims against Captain DePerry must be resolved in a Connecticut court, rather than here, the only remaining issue is whether there is a basis for this Court to retain jurisdiction over the claim against the Town of Old Saybrook.

In Count Three of his Complaint, Mr. Amancio alleges that Old Saybrook failed "to implement or train its employees regarding" the Trust Act. Compl. at 5–7. The Trust Act, *inter alia*, "orders local law enforcement not to: '[e]xpend or use time, money, facilities, property, equipment, personnel or other resources to communicate with a federal immigration authority regarding the custody status or release of an individual targeted by a civil immigration detainer[;]" or "[a]rrest or detain an individual pursuant to a civil immigration detainer . . . [or] [g]ive a federal immigration authority access to interview an individual who is in the custody of a law enforcement agency," subject to limitation not relevant in this case. Connecticut Mem. at 5–6 (quoting Conn. Gen. Stat. § 54-192h).

Although styled as a Removal Notice for all Defendants, the Notice of Removal exclusively addresses the ground on which Captain DePerry is entitled to remove his case. *See*

---

[8] Significantly, a state law claim for false arrest, standing alone, would not provide a sufficient basis for removal under § 1442, and having decided not to retain jurisdiction over the Count Two claim expressly involving an alleged violation of the Trust Act, there is no reason for this Court to retain jurisdiction over Count One, the false arrest claim. *See In re Joint Eastern and Southern Dist. Asbestos Litig.*, 14 F.3d 726, 730 n. 2 (2d Cir.1993) ("[T]he court may not exercise supplemental jurisdiction over claims unless the court has 'original jurisdiction' over at least one of the plaintiff's claims.").

Notice of Removal at 1 ("Jeffry DePerry and the Town of Old Saybrook . . .  respectfully files this Petition of Removal to the United States District Court for the District of Connecticut." (sic)). Indeed, nowhere in their submissions do Defendants argue, or even suggest, that Old Saybrook is entitled to removal under §1442(a)(1). Instead, they ask this Court to exercise "supplemental jurisdiction over the plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367[,]" without identifying the state law claims in question. *Id.* at 5, ¶ 11.

"The federal [removal] statute permits removal only if [a defendant], in carrying out the 'acts' that are the subject of the [plaintiff's] complaint, was 'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson*, 551 U.S. at 147 (quoting 28 U.S.C. § 1442(a)(1)) (cleaned up). Here, Mr. Amancio's claim against Old Saybrook is for "failure to implement or train its employees regarding" the Trust Act. Compl. at 5. He argues that suffered injuries "[a]s a direct and proximate cause [of] illegal actions, policies and practices of the Town and the Old Saybrook Police Department[.]" *Id.* at 6. Nothing in the Notice of Removal suggests that the alleged "illegal actions, policies and practices" were undertaken at the behest of a federal officer. The Court therefore cannot find that Old Saybrook is entitled to removal under § 1442(a)(1).[9]

In the absence of this Court retaining jurisdiction over Captain DePerry's claims, there also is no need to address Defendants' request that this Court exercise supplemental jurisdiction over the claim against Old Saybrook. *See* Notice of Removal at 5, ¶ 11 ("This Court has supplemental jurisdiction over the plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367. "). But, even if that were not the case, supplemental jurisdiction would not be appropriate in this case in any event.

---

[9] Permitting a municipality, such as the Old Saybrook, to invoke § 1442(a)(1), would also run counter to purpose of the Act. Section 1442(a)(1) was "an attempt to protect federal officers from interference by hostile state courts." *Willingham,* 395 U.S. at 405. A state court could hardly be seen as "hostile" to a political subdivision of that state.

In relevant part, § 1367(a) states: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). Section 1367(c) instructs district courts that they "may decline to exercise supplemental jurisdiction over a claim" which, *inter alia*, "raises a novel or complex issues of state law[.]" 28 U.S.C. § 1367(c)(1).

The claim against the Old Saybrook is precisely the type of "novel" and "complex issues of state law[,]" 28 U.S.C. § 1367(c)(1), over which, the Second Circuit has cautioned district courts against exercising their supplemental jurisdiction authority. *See Indep. Bankers Ass'n of New York State, Inc. v. Marine Midland Bank, N.A.*, 757 F.2d 453, 465 (2d Cir. 1985) (reversing a district court's discretionary decision to exercise supplemental jurisdiction over a state law claim because that claim "had never been addressed by the state courts[]").

The Trust Act, "first passed in 2013 and significantly revised in 2019[,]" Connecticut Mem. at 5, is silent on whether municipalities are required to provide training to its police officers with respect to the Act. *Cf.* Conn. Gen. Stat. § 54-192h(f) (*"*The Office of Policy and Management shall ensure that the requirements of this section are disseminated to, and appropriate training is provided for, all affected law enforcement agencies[.]") Similarly, the Trust Act is silent on whether liability may lie for a municipality's failure to provide such training.

Here, the claim against Old Saybrook will necessarily involve the issue of whether this newly revised legislation implies a private right of action against municipalities for failure to train its officers about the requirements of this law. Connecticut state courts are the ones, in the

first instance, to address these "novel" and "complex issues" of Connecticut state law. 28 U.S.C.

§ 1367(c)(1).

Even if it had retained the claims against Captain DePerry, the Court would still have

declined to exercise its supplemental jurisdiction authority over this the claims against Old

Saybrook.

## IV.    CONCLUSION

For the foregoing reasons, motion to remand is **GRANTED**.

The Clerk of Court is respectfully directed to remand this case to the Superior Court of

Connecticut, Judicial District of Middlesex, and to close it here.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of January, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE